We move to the sixth case Rojas v. Motorsport, Inc. May it please the court. Good morning, Your Honors. My name is Dmitry Feofanov, ChicagoLemonLaw.com. I represent Mr. Rojas. In this case, we are asking this court to take another look at the practice of yoyo sales. This court has addressed this issue some 18 years ago in a case named Genikovsky. And I wanted to put it on the table right now because obviously if our case is identical to Genikovsky, then we lose because there is a binding precedent. We do not think our case is identical for a number of reasons, the biggest one of which is that we present a different theory of liability. And also that in Genikovsky, the parties did not present the court with evidence that the finance contracts involved in Genikovsky were capable of being unilaterally canceled by the seller. And so because we have a different legal theory, which by the way was recognized by a couple of district courts, we think that Genikovsky is not binding on this court and this issue deserves a second look. And the issue involves yoyo sales, which are problematic because they involve a circumstance where a lot of times, one party thinks it's not bound by the contract, whereas the other party is bound and that creates an issue with respect to adequacy and validity of the TILA disclosures which the statute requires every finance contract to have in a TILA box. Interest rate, APR, number of payments, that kind of thing. And in this case, it's kind of indicative of the to expect regular people from the street to understand. The record in this case contains statements from people in the industry who can't agree on such basic things as whether the credit was extended. The finance manager of the dealership within five seconds testified that the credit was not approved and then it was approved with conditions. I don't know what it means, but those seem to be contradictory statements. The defendant's lawyer said the credit was not approved the way it was structured. I don't know what it means either. And then further, the lawyer said that the disapproval, the denial came from a finance company, which of course is another issue that always comes up in those cases because in this particular case, the retail installment contract, the finance contract involved in the transaction identified the defendant, the dealer, ex-motorsports, as quote seller creditor. And yet the defendant's lawyer made the deposition that he was not a creditor in light of the unambiguous statement in the contract. He also testified, among other things, that the finance contract is meant to be assigned to a bank, which is fine, but he also said that if there is no assignment, seal the disclosures have no effect, which of course is not what the statute requires them to do. It requires them to make meaningful seal the disclosures at the time of consummation of contract. So the theory that we brought before you is that when things of that nature happen, the disclosures really are not meaningful. They really don't mean anything. I was interested to hear the previous case, which was just argued before you, and the defense counsel cited the case involving, I think, extension of credit. I perked up and I wrote down what he said. Apparently there was a Seventh Circuit case which held that the statement that credit would be approved versus is approved, those statements are not the same thing, because the first statement is not an unambiguous promise. That's exactly what we're talking about here, because in a Yo-Yo transaction, the disclosures that are given are not unambiguous because the dealer, especially an unscrupulous dealer, has his fingers crossed and holds it behind his back and thinking, well, I have a unilateral right to affect assignment or not. If I don't get enough money, I might not. I might try to change the deal and get more money. In fact, we have in the record exactly that, because after everything was said and done and Mr. Rojas came to the dealership the final time thinking that he's getting his money, the finance manager said, well, never mind. We can still sell your car, bring more money, get a cosigner. It's in the record. In those instances, yes never means yes and no never means no. They both mean maybe and they both mean invitations to negotiate. And that's fine, because that's buying and selling. But with respect to TILA disclosures, which are a strict compliance statute, they have to have some meaning. I hasten to add that as I wrote in the brief, it would be generally a violation. I learned how to use the word generally during my clerkship time, because that means always there is an exception. There should be an ability for the dealer to do that kind of deal, but of course in the statute provides an easy way out of that. All they need to do is to designate the TILA disclosures estimates. This way the buyer doesn't think they have the final deal. There is no shaking of hands. They don't take the car, showing it to the relatives and then having it to bring it back. They will be able to shop the terms. You're in your rebuttal time, you know. Thank you, Jay Powell. Thank you, I appreciate it. I will continue at my rebuttal time. Thank you, counsel. Thank you. Mr. Lewis. May it please the court, counsel. My name is Jill Lewis and I represent the defendant X Motorsport. I'm going to go a little off script here, because I want to follow up with a couple of things counsel said. Plaintiff plays a little fast and loose with the facts, and I pointed it out in my brief, and I'm going to clear it up right now. X Motorsport is not an unscrupulous car dealership that had its fingers crossed behind its back, hoping to swindle the plaintiff. What happened here is the plaintiff buys a car, he signs a standard buyer's order, he wants to finance it, so he signs a retail installment contract. Plaintiff admits, all the disclosures are accurate, he takes the car home. He says he experiences mechanical problems, so within a week, within a few days, he calls X Motorsport back and says, I'm having problems. And they say bring the car in. And he says, okay. But they can't figure out a time when he can bring the car in. So he decides in a week, I want to return this car. I don't want it anymore. And even though they didn't have to, they said, fine, it's been a week, bring the car back in. He says, I just want my money back. This is awesome. I get my down payment back, you get your car back. So the day is set. He comes in. He goes to the office. He says, I want my money. The owner says, okay, but I got to see the car. And he goes, well, I didn't bring the car. And the owner says, you didn't bring the car. And that's where this case ends up. Okay? From that, it turned into a civil rights case, this TILA case. X Motorsport tried to be... Things got out of hand. I'm sorry? Things got out of hand. Things got out of hand. But what did not happen is that X Motorsport did not violate TILA in its disclosures. X Motorsport did not cancel this deal because they couldn't make an assignment or because financing didn't go through. This deal canceled because the plaintiff didn't want his car anymore. Whether it was buyer's remorse or mechanical problems, I have no idea. He says it was mechanical problems. Okay, fine. They agreed to return it. He doesn't bring the car back. So then they're like, where's our car? We want our car. And he says, I'm not bringing your car. And then this stuff comes up about financing. Nothing was ever fleshed out, so no one knows what any of it means. But what I do know is that before one word about financing comes up, the deal is done. He ultimately gets back. They end up giving him his money back. He brings the car back. That's the end of that. And then we get the lawsuit. And so here I am trying to, or asking this court to affirm the district court's entry of summary judgment on the grounds that the contract documents did not violate TILA when we have the plaintiff admitting that they're all accurate. But he comes up with this argument that, okay, they're accurate, but they're not really meaningful. So therefore, TILA is violated. And why aren't they meaningful? Because there's a condition subsequent in the contract which allows you to cancel it, which we never exercised, but that's the argument. The contract documents say, you can cancel this, Mr. Byer, at any time if we agree. And that's exactly what happened. So, plaintiff framed the issue in his, in this appeal, and in his brief there's one issue, and that issue is whether a yo-yo sale, the disclosures mandated by TILA become meaningless. So, there was no yo-yo sale. There was a spot delivery to the extent that he took the car that day, but as this court in Janikowski has discussed, a spot delivery involves a trade-in, the buyer takes the new car home and he becomes attached to it, and then the dealer calls him and says, the financing didn't go through, we want our car back. And he says, but I love my car. And they say, bring the car back. And he doesn't bring the car back and they go repossess it. That is a spot delivery. That is not what happened here. But even in that situation, Janikowski, this court held that that does not violate TILA. Because all that TILA requires is that disclosures be accurate. And we have accurate disclosures here. We have all the mandatory disclosures here. What we have is a plaintiff who has been very creative with an argument, and unfortunately the facts just do not support the argument. You know, it's not required that you use all the time. I'm sorry? It's not required that you use all your time? Your Honor, I am so sorry, but I am like seriously hard of hearing. I said it's not required that you use all your time. If you run out of sentences. You think you've said enough, you can quit. Does it look like I should just end it all right here? I just want to say that, you know, not only are the facts don't support his case, but the law doesn't either. We have a case directly on point, Janikowski, and the district court felt bound by it. There's no reason to depart from Janikowski. If you have accurate disclosures under TILA, they're accurate. It doesn't matter if there's a condition subsequent in a contract that the plaintiff read and signed. So with that, I would ask that this court affirm the Injury Summary Judgment in favor of Ex Metres Court, and thank you. Thank you, Ms. Lewis. Mr. Meyer, or Mr. Hevano? Thank you. How much do we pay? You have two minutes. I will not use even that much, I think. Ms. Lewis mentioned buyer's order, which of course is a cash contract. Ever since I left Brooks Adams and Tarullos in 2002, my only legitimate job before this one, I never, and started doing cars, I never understood why you have to sign a cash contract in a credit contract controls. And while I appreciate Ms. Lewis's recitation of the facts, they don't really matter because TILA disclosures, there are cases galore about that, must be the time to evaluate whether they're appropriate or not is the time when they're given, not some other time. In fact, there are cases that say that people who did bad things, criminals, still are entitled to protection of TILA because that's a statute of strict application. Now, Ms. Lewis said the contract, the client canceled contract. Well, this comes before you on a summary judgment, so the standard there is a genuine issue of material fact. Not so. We have a statement in the record, a document 42 from the lawyer says credit was not approved the way it was structured. So here's the genuine issue of material fact. So, and it's not accurate that the disclosures be just accurate. No, the statute says they have to be meaningful. I cited the third district case in the brief where they have feigned compliance, some bank fees that they said we will not to impose it shortly, and the court said that in TILA context, that is worse than the actual misrepresentation because they feign compliance that they don't mean to eventually. They intend to violate it. We need meaningful disclosure of TILA terms, and that's what we're asking this court to address. Thank you. Thank you, counsel.